IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**MARION W.,**[1]

        Plaintiff,

v.

**COMMISSIONER OF SOCIAL SECURITY**,

        Defendant.

Civ. No. 3:19-cv-00539-AA

**OPINION & ORDER**

AIKEN, District Judge:

Plaintiff Marion W. seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying benefits. The decision of the Commissioner is AFFIRMED and this case is DISMISSED.

## BACKGROUND

On August 17, 2016, Plaintiff filed a Title XVI application for supplemental security income and on August 25, 2016, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, both alleging disability beginning on January 31, 2016. Tr. 16. The applications were denied initially and upon reconsideration and, at Plaintiff's request, a hearing was held before an Administrative Law Judge ("ALJ") on September 20, 2018. *Id.* On November 15, 2018, the ALJ issued a decision finding Plaintiff not disabled. Tr. 28. On

---

[1] In the interest of privacy, this opinion uses only first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Page 1 – OPINION & ORDER

February 28, 2019, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. Tr. 1. This appeal followed.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r*, 648 F.3d 721, 724 (9th Cir. 2011).

> The five-steps are: (1) Is the claimant presently working in a substantially gainful activity? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal one of a list of specific impairments described in the regulations? (4) Is the claimant able to perform any work that he or she has done in the past? and (5) Are there significant numbers of jobs in the national economy that the claimant can perform?

*Id.* at 724-25; *see also Bustamante v. Massanari,* 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Bustamante*, 262 F.3d at 953. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54.

## THE ALJ'S FINDINGS

The ALJ performed the sequential analysis. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of January 31, 2016. Tr. 18.

At step two, the ALJ found that Plaintiff had the following severe impairments: borderline intellectual functioning; major depressive disorder; and "minimal" degenerative changes of the lumbar spine. Tr. 19. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 20.

The ALJ found Plaintiff had the residual functional capacity ("RFC") to perform medium work with the following additional limitations: he could do simple, routine tasks with occasional superficial contact with the public. Tr. 21-22.

At step four, the ALJ found Plaintiff was capable of performing his past relevant work as a kitchen helper, hospital cleaner, and industrial cleaner. Tr. 27. As a result, the ALJ found that Plaintiff was not disabled without reaching step five. Tr. 27-28.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. *Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotation marks omitted). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).

When the evidence before the ALJ is subject to more than one rational interpretation, courts must defer to the ALJ's conclusion. *Batson*, 359 F.3d at 1198 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)). A reviewing court, however, cannot affirm the Commissioner's decision on a ground that the agency did not invoke in making its decision. *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006). Finally, a court may not reverse an ALJ's decision on account of an error that is harmless. *Id.* at 1055–56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## DISCUSSION

Plaintiff alleges the ALJ erred by (1) improperly weighing the medical opinion evidence; (2) failing to include all serious impairments at step two of the sequential analysis; and (3) improperly discrediting Plaintiff's subjective symptom testimony. Plaintiff contends that these errors infected the ALJ's conclusions at steps four and five of the sequential analysis. Plaintiff also asserts that the Appeals Council erred by failing to consider a letter submitted by Plaintiff's sister as part of Plaintiff's petition for review of the ALJ's decision and that the letter undermines the ALJ's ultimate determination.

### I. Medical Opinion Evidence

Plaintiff contends that the ALJ erred by failing to properly consider the medical opinion of examining psychologist James Mours, Psy. D. The ALJ is responsible for resolving conflicts in the medical record. *Carmickle v. Comm'r*, 533 F.3d 1155, 1164 (9th Cir. 2008). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant[.]" *Turner v. Comm'r*, 613 F.3d 1217, 1222 (9th Cir. 2010) (internal quotation marks and citation omitted). An ALJ may reject the uncontradicted medical opinion of


a treating or examining physician only for "clear and convincing" reasons supported by substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). An ALJ may reject the contradicted opinion of a treating or examining doctor by providing "specific and legitimate reasons that are supported by substantial evidence." *Id.*

In this case, Dr. Mours performed a psychodiagnostic examination of Plaintiff on December 6, 2016. Tr. 429-32. Dr. Mours assessed borderline intellectual functioning, major depressive disorder, alcohol use disorder, cannabis use disorder, tobacco use disorder, arthritis "(per claimant report)", and chronic pain. Tr. 432. Dr. Mours observed:

> If the claimant were required to work full-time he would have difficulty understanding, remembering and following complex written and verbal instructions, maintaining sustained attention and concentration (for more than 5 minutes), being persistent at his tasks and working at a standard pace. He would also struggle with mental calculations and mentally manipulating information.
>
> If the claimant were to work full-time he would have adequate performance understanding, remembering and following simple written and verbal instructions, paying general attention, and exhibiting general insight and common understanding within a workplace environment. The claimant is also likely to interact with others in a socially appropriate manner.

Tr. 432.

The ALJ gave "some weight" to Dr. Mours' opinion, noting Dr. Mours' expertise, his personal examination of Plaintiff, and his experience with the Social Security disability process. Tr. 25. The ALJ noted that Dr. Mours' opinion was supported by Plaintiff's performance at the evaluation and that Dr. Mours' conclusions with respect to Plaintiff's ability to understand and persist with complex tasks was consistent with the medical record. *Id.* The ALJ relied upon Dr. Mours' evaluation in formulating the RFC limitation restricting Plaintiff to simple, routine tasks. *Id.* However, the ALJ credited the opinions of the reviewing physicians in finding that Plaintiff should be limited to no more than occasional, superficial contact with the public. *Id.*

Plaintiff contends that the ALJ should have interpreted Dr. Mours' report to exclude sustained concentration or work. As noted, the ALJ is responsible for translating medical opinions into concrete limitations and the Court concludes that the ALJ reasonably interpreted Dr. Mours' opinion when formulating the RFC limiting Plaintiff to simple routine tasks. Although Plaintiff advances an alternative interpretation of Dr. Mours' report, the Court must defer to the ALJ's reasonable and well-supported conclusion. The only point upon which the ALJ expressly deviated from Dr. Mours' report was in finding, based on the opinions of the reviewing physicians, that Plaintiff was more limited than Dr. Mours believed. Tr. 25. Plaintiff does not, however, assert that this aspect of the ALJ's decision was in error.

On this record, the Court concludes that the ALJ did not err in assessing Dr. Mours' opinion or in incorporating Dr. Mours' opinion into the RFC.

**II.     Step Two**

Plaintiff asserts that the ALJ erred by failing to include polyarthritis, rheumatoid arthritis, sciatica, and bilateral hand arthritis among the list of severe impairments at step two of the sequential analysis.

Step two of the sequential analysis is "merely a threshold determination meant to screen out weak claims." *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017). Step two "is not meant to identify the impairments that should be taken into account when determining the RFC," and "in assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not severe." *Id.* at 1048-49 (internal quotation marks and citation omitted, alterations normalized). "The Ninth Circuit has held when the ALJ has resolved Step Two in a claimant's favor, any error in designating specific impairments as severe at Step Two does not prejudice a claimant if the ALJ considered the impairments when formulating

his assessment of Plaintiff's RFC." *Nanette A. v. Comm'r*, 3:19-cv-00509-BR, 2020 WL 1528281, at *4 (D. Or. Mar. 31, 2020) (citing *Vivian v. Saul*, 780 F. App'x 526, 527 (9th Cir. 2019); *Buck*, 869 F.3d at 1049).

In this case, the ALJ resolved step two in Plaintiff's favor. Tr. 19. Although the ALJ did not include arthritis or sciatica among Plaintiff's severe impairments, the ALJ discussed Plaintiff's allegations of back and joint pain at some length in formulating the RFC and determined that Plaintiff's allegations were not supported by the medical record. Tr. 23-24. Of note, the ALJ discussed an examination of Plaintiff on December 10, 2016 by John Ellison, M.D. Tr. 24, 435-37. Dr. Ellison found mild tenderness in Plaintiff's joints, especially the knees, but with no arthritic stigmata; normal station and gait; normal muscle bulk and tone throughout with no atrophy; and a normal range of motion in Plaintiff's back with some discomfort at the extremes. Tr. 436. In his final assessment, Dr. Ellison diagnosed: "Multiple joint pain with essentially negative exam, including knees which seems to have been his worst problem." *Id*.

Plaintiff reported to the emergency room with reports of back pain, but an x-ray in May 2017 found no acute abnormality and "minimal degenerative changes." Tr. 472. In an examination in September 2017, the ER physician reported no deformity, discoloration, or poor tenderness or CVA tenderness with percussion in Plaintiff's back. Tr. 474. Plaintiff had no deformity or swelling, was observed to have a steady gait, and was able to deep knee bend and stand on his toes. *Id*. The ER physician assessed chronic low back pain with right sided sciatica, but Plaintiff was discharged home "in good condition" and it was recommended that he take naproxen and Flexeril and follow up with his primary care provider. *Id*.

Plaintiff returned to the emergency room in October 2017 where the physicians found a normal range of motion of all joints without pain and diffuse tenderness but a normal range of

motion in Plaintiff's back. Tr. 504. Physicians found 5/5 strength in upper and lower extremities, negative straight leg raise, and steady gait. *Id.* Plaintiff was assessed with "[c]hronic bilateral low back pain without sciatica" and restless leg syndrome and advised to follow up with his primary care physician for further evaluation. Tr. 505.

Plaintiff returned to the emergency room in February 2018 complaining of back and hip pain after sleeping on the floor for several days. Tr. 565. Plaintiff was found to have normal range of motion in his back and normal gait with the ability to bear weight on his toes and heels. Tr. 567. Plaintiff was assessed a strain of his lumbar region. *Id.*

The ALJ considered this evidence and concluded that Plaintiff's pain complaints limited him to a medium exertional level. Tr. 24. Although Plaintiff urges a different outcome, the ALJ's conclusion is supported by substantial evidence and demonstrates that the ALJ did not fail to consider Plaintiff's allegations of arthritis and sciatica in formulating the RFC. Accordingly, the ALJ did not err at step two of the sequential analysis.

### III. Subjective Symptom Testimony

Plaintiff asserts that the ALJ erred by discounting his subjective symptom testimony. To determine whether a claimant's testimony is credible, an ALJ must perform a two-stage analysis. 20 C.F.R. § 416.929. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). At the second stage of the credibility analysis, absent evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of symptoms. *Carmickle*, 533 F.3d at 1160.

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (internal quotation marks and citation omitted). An ALJ may use "ordinary techniques of credibility evaluation" in assessing a claimant's credibility, such as prior inconsistent statements concerning the symptoms, testimony that appears less than candid, unexplained failure to seek treatment or follow a prescribed course of treatment, or a claimant's daily activities. *Id.*

In this case, Plaintiff testified at the hearing that he has not worked for the four years prior to the hearing and that he'd left his last job as an in-home caregiver because of his long-term and short-term memory loss. Tr. 41-43. Plaintiff testified that his last caregiving client passed away and that Plaintiff submitted falsified paperwork to continue drawing pay for caring for the deceased client, which resulted in Plaintiff's arrest and conviction for fraud. Tr. 43. Plaintiff spent fourteen days in jail following his conviction. Tr. 45.

Plaintiff testified that he was unable to work due to arthritis, swelling in his hands, and his memory problems. Tr. 43-44. Plaintiff testified that he has arthritis throughout his body. Tr. 45. Plaintiff reported that he has "bad hips, my shoulders are dislocated and my elbows, even if I just tap them they hurt like hell." Tr. 47. Plaintiff testified that he has sciatica, which causes pain from his back, through his hips, and down to his knees. *Id.* Plaintiff reported that he suffers intermittently from restless leg syndrome which causes his knees to swell and prevents him from walking or sitting. Tr. 47-48. Plaintiff testified that his left knee is worse than his right and that limits him to standing for no more than 10 minutes. Tr. 48. Plaintiff also testified that he experiences weakness and lack of full strength. Tr. 49. With respect to his mental limitations,

Plaintiff testified that he experiences shame concerning his appearance in public, an inability to think clearly, and confusion stemming from issues with his short-and-long-term memory. Tr. 48-49.

In terms of daily living, Plaintiff testified that he was homeless and was staying with friends. Tr. 40, 44. Plaintiff does not have a driver's license and gets around by walking or taking the bus, although he reported that walking even short distances are painful for him. Tr. 40. Plaintiff collects cans in the mornings and evenings and reported that he sleeps in abandoned cars unless he is staying with friends. Tr. 45-46. Plaintiff testified that his arthritis makes it difficult for him to wash dishes or sweep. Tr. 45, 47.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms but that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" Tr. 22.

The ALJ provided multiple bases for discounting Plaintiff's subjective symptom testimony. First, the ALJ noted that Plaintiff had left his previous work for reasons unrelated to his disability—namely that he had been jailed for falsifying work documents to continue drawing pay after his client passed away. Tr. 24, 43. An ALJ may properly consider evidence that a claimant stopped working for reasons other than their medical impairments in weighing the claimant's testimony. *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001). On this record, the Court concludes that the ALJ reasonably considered Plaintiff's reasons for leaving his caregiver position.

The ALJ also noted that, despite alleging serious mental impairments, Plaintiff did not seek mental health treatment of any kind. Tr. 23. "The ALJ is permitted to consider lack of treatment

in his credibility determination." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). Although Plaintiff asserts that his failure to pursue treatment is explained by a lack of health insurance coverage, the record shows that Plaintiff had insurance under the Oregon Health Plan ("OHP") through April 2015 when his coverage lapsed. Tr. 295. By December 10, 2016, Plaintiff reported that he was once again covered by OHP. Tr. 435. And, as the Commissioner points out, there are hundreds of pages of medical records and treatment notes in this case indicating that Plaintiff successfully assessed medical care on many occasions during the relevant period. On this record, the Court concludes that the ALJ reasonably considered Plaintiff's failure to seek mental health treatment in assessing Plaintiff's subjective symptom testimony.

In addition, the ALJ noted inconsistencies in Plaintiff's statements about his mental health symptoms, as well as inconsistencies between Plaintiff's allegations and the medical records. Tr. 23. On December 6, 2016, Plaintiff denied having visual or auditory hallucinations during his examination by psychologist Dr. Mours, but on December 10, 2016, Plaintiff told examining physician Dr. Ellison that "he has had hallucinations, both auditory and visual, all of his life but has never had treatment for it." Tr. 431, 435. And during the hearing Plaintiff testified that he suffers from long-and-short-term memory loss, Tr. 42, and depression, Tr. 48, but Plaintiff denied memory loss and depression when speaking to treatment providers. Tr. 305, 308, 320. Following an examination in December 2016, Dr. Mours observed that Plaintiff "demonstrated good long-term memory" and "fair" short term memory. Tr. 431. The Court concludes that the ALJ reasonably considered these inconsistences in assessing Plaintiff's subjective symptom testimony and that the ALJ's conclusions are supported by substantial evidence in the record.

With respect to Plaintiff's physical limitations, the ALJ noted that Plaintiff's testimony was inconsistent with the medical evidence. Tr. 22-24. "Contradiction with the medical record is a

sufficient basis for rejecting the claimant's subjective testimony." *Carmickle*, 533 F.3d at 1161. Plaintiff testified during the hearing that he has disabling arthritis pain throughout his entire body. Tr. 45. As discussed in the previous section, however, Plaintiff's allegations are contradicted by the objective medical findings, which are essentially normal. Of particular note, Dr. Ellison found mild tenderness in Plaintiff's joints, especially the knees but with no arthritic stigmata, normal station and gait, normal muscle bulk and tone throughout with no atrophy, and a normal range of motion in Plaintiff's back with some discomfort at the extremes. Tr. 436. In his final assessment, Dr. Ellison diagnosed: "Multiple joint pain with essentially negative exam, including knees which seems to have been his worst problem." *Id.* On this record, the Court concludes that the ALJ did not err by discounting Plaintiff's subjective symptom testimony based on the contradictory information in the medical record.

Finally, the ALJ relied on conflict between Plaintiff's activities of daily living and his alleged limitations. Tr. 25. Plaintiff testified at the hearing that he has arthritis throughout his body and was unable even to sweep. Tr. 45. And in his function report, Plaintiff stated that he would strain to lift 40 or 50 points. Tr. 241. ALJ noted, however, that the medical records show that Plaintiff was able to carry a mini refrigerator down a flight of stairs, Tr. 450; to help lift another person, Tr. 476; and, in February 2018, Plaintiff reported that he had "lifted a lot of especially heavy things over the last week," Tr. 565. Plaintiff also alleged that he would be able to walk for 200 yards before needing to stop and rest. Tr. 241. The ALJ noted, however, that Plaintiff told Dr. Ellison that he could "easily" walk for a mile. Tr. 25, 435. On this record the Court concludes that the ALJ reasonably considered Plaintiff's activities of daily living in assessing Plaintiff's credibility.

In sum, the Court concludes that the ALJ provided adequate support for discounting Plaintiff's subjective symptom testimony and that the ALJ's conclusions are supported by substantial evidence in the record.

### IV. Evidence Submitted to the Appeals Council

Plaintiff submitted a letter written on December 2, 2016 by his sister Patrice P. to the Appeals Council as part of his appeal of the ALJ's decision. Tr. 12. This letter was not presented to the ALJ. In her letter, Patrice P. reported that Plaintiff no longer demonstrated his "Karate stances, back flips and dancing" when he attended family gatherings. *Id.* Patrice P. reported "what seems to be memory loss," as well as incidents where Plaintiff would drop objects or was unable to open jars. *Id.* Patrice P. also reported that Plaintiff's hands were swollen and that his "back, knees, arthritis and memory" were preventing him from working. *Id.* The Appeals Council reviewed Patrice P.'s letter and concluded that "this evidence does not show a reasonable probability that is would change the outcome of the decision." Tr. 2.

The Ninth Circuit has held that "when a claimant submits evidence for the first time to the Appeals Council, which considers that evidence in denying review of the ALJ's decision, the new evidence is part of the administrative record, which the district court must consider in determining whether the Commissioner's decision is supported by substantial evidence." *Brewes v. Comm'r*, 682 F.3d 1157, 1159-60 (9th Cir. 2012). "Only when the Appeals Council fails totally to acknowledge the new evidence in accordance with the relevant regulations is remand to the ALJ appropriate," and "[i]f the Appeals Council reviews a plaintiff's additional evidence but ultimately declines to review the ALJ decision, the ALJ's decision becomes the final decision of the Commissioner, subject to the substantial evidence review based on the record as a whole." *Cheryl R. v. Comm'r*, Case No. 6:180cv001531-MK, 2019 WL 6131440, at *5 (D. Or. Nov. 19, 2019).

"Federal courts may not review Appeals Council decisions regarding requests for an Appeals Council review of an ALJ decision." *Id.*

Had it been presented to the ALJ, Patrice P.'s letter would have been lay witnesses testimony. When an ALJ discounts the testimony of a lay witness, they must give "reasons that are germane to each witness." *Valentine v. Comm'r*, 574 F.3d 685, 694 (9th Cir. 2009). When the ALJ gives clear and convincing reasons for rejecting a claimant's subjective symptom testimony and the lay witness gives testimony similar to the claimant's own testimony, "it follows that the ALJ also gave germane reasons for rejecting her testimony." *Id.*

In this case, Patrice P.'s letter is generally similar to Plaintiff's own testimony concerning his pain and memory issues. For the reasons set forth in the previous section, the Court concluded that the ALJ gave clear and convincing reasons for rejecting Plaintiff's testimony and the inclusion of the later-filed letter from Patrice P. does not alter that conclusion. The reasons set forth for discounting Plaintiff's subjective symptom testimony apply with equal force to discount the lay witness statement of Patrice P.

In sum, the Court concludes that the ALJ did not err at step two, or in weighing the medical opinion evidence, or in assessing Plaintiff's subjective symptom testimony, nor does the inclusion of Patrice P.'s letter undermine the ALJ's ultimate finding. The ALJ's hypothetical question to the vocational expert adequately captured Plaintiff's limitations and the Court concludes that the ALJ's findings at step four are not erroneous.

## CONCLUSION

Pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is AFFIRMED and this case is DISMISSED.

It is so ORDERED and DATED this   2nd   day of February 2022.

        /s/Ann Aiken
        ANN AIKEN
        United States District Judge